IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Linda Vandeusen; Advocates for ) <br> Disabled Americans (AFDA), ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Marcia Adams, in her Official Capacity ) <br> as Acting Director of the South Carolina ) <br> Department of Motor Vehicles, ) <br> ) <br> Defendant. ) <br> ) | C.A. No. 3:06-1092-MBS-JRM <br><br> **REPLY TO PLAINTIFF'S** <br> **SUMMARY JUDGMENT OPPOSITION** |

### THE PLAINTIFFS HAVE NOT ESTABLISHED
### ENTITLEMENT TO EQUITABLE RELIEF

**1. The plaintiffs' claims are time-barred.**

In response to the defendant's motion for summary judgment, the plaintiffs have stated that "Plaintiff Vandeusen has been a patron at Defendant's DMV on many occasions soon after it opened in 1989." [Pls' brief, p. 5]. The plaintiffs appear to concede that the Shop Road facility has not undergone "alterations" as defined by the ADA since its pre-ADA construction.[1] Vandeusen suggests she is a longtime expert on ADA issues,[2] and the plaintiffs concede that

---

[1]The plaintiffs suggest that Stewart Blume was never identified as a witness, but see Court Docket Entry Number 17, filed November 22, 2006, which identifies Stewart Blume as an "architect[] who perform[s] work for the Department of Motor Vehicles, [and is] expected to refute the plaintiffs' allegations." The plaintiffs also object that Stewart Blume and James Drayton are not expert witnesses, but the defendant has offered them as fact witnesses on issues within the realm of their knowledge as individuals who perform work for the defendant. Moreover, while the plaintiffs have identified a purported expert, they have not complied with the requirements for using an expert and thus should not be heard to complain.

[2]The plaintiffs assert that Vandeusen "was the ADA Coordinator for the University of South Carolina." [Pls' brief. p. 5]. In fact, Vandeusen's testimony in a New York lawsuit shows

"[o]bviously, Plaintiff could have filed suit in 1992." [Pls' brief, p. 11]. Nevertheless, the plaintiffs baldly assert that Vandeusen was justified in waiting until 2006 – *fourteen years later* – to file this lawsuit. Based on the plaintiffs' amazing concessions, the Court should find the claims in this lawsuit are time-barred not just by the statute of limitations but also under the doctrine of laches.

      a.    **The statute of limitations bars the plaintiffs' claims.**

In response to the defendant's motion for summary judgment, the plaintiffs argue they are now seeking only an injunction,[3] an equitable remedy, and thus the statute of limitations should not apply to bar their claims. In defense of this position, the plaintiffs cite several ancient cases. Obviously, the plaintiffs were unable to find any current authority, particularly within the Fourth Circuit, to support their position.

Discrimination statutes are universally governed by statutes of limitations. In addressing statute of limitations arguments, the courts make no distinction based on the type of relief sought. In the Fourth Circuit alone, there are numerous decisions in which the Court has held that actions for equitable relief are barred by applicable statutes of limitations. *See, e.g.*, R.R. ex rel. R v. Fairfax County School Board, 338 F.3d 325 (4th Cir. 2003) (action for injunctive relief barred by statute of limitations); Franks v. Ross, 313 F.3d 184 (4th Cir. 2002) (action for injunctive relief governed by statute of limitations); Chao v. Virginia Dept. of Transp., 291 F.3d 276 (4th Cir. 2002) (action to enjoin overtime violations barred by statute of limitations); Sundeman v. The

---

she has been intimately familiar with issues relating to accessibility for disabled individuals dating back to 1990. [*See* "Vandeusen's New York deposition," pp. 8-10, filed herewith].

[3]In the Complaint's "First Count" and "Third Count," Vandeusen alleges entitlement to monetary damages, as she has done and continues to do in all of her lawsuits until such time as it seems to benefit the plaintiffs to abandon such a claim.

2

Seajay Society, Inc., 142 F.3d 194 (4th Cir. 1998) (action to recover manuscript barred by statute of limitations); Hogan v. Brotherhood of Railway, Airline and Steamship Clerks, 817 F.2d 248 (4th Cir. 1987) (suit for declarative and injunctive relief barred by statute of limitations); Bireline v. Seagondollar, 567 F.2d 260 (4th Cir. 1977) (claim for injunctive relief and backpay due to discrimination barred by statute of limitations). A partial list of actions for injunctions which also are governed by a statute of limitations include an action under the South Carolina Human Affairs Law (*see* S.C. Code Ann. §§ 1-13-90(d)(9) and 1-13-90(a)), an action under Title VII of the Civil Rights Act of 1964, as amended (*see* 42 USCA §§ 2000e-5(g) and 1601.19), and an action under the South Carolina Tort Claims Act (*see* S.C. Code Ann §§ 15-78-50(c) and 15-78-110). Clearly, neither South Carolina nor federal law prevents actions for injunctions from being limited by statutes of limitations. Therefore, Vandeusen's argument that a statute of limitation cannot bar her suit for an injunction is without merit.

Vandeusen's argument that statutes of limitations are "not favored by the court" is unsupported by any relevant authority and is clearly contradicted by an abundance of case law. The United States Supreme Court has reasoned:

> Because statutes of limitation are among the universally familiar aspects of litigation considered indispensable to any scheme of justice, it is entirely reasonable to assume that Congress did not intend to create a right enforceable in perpetuity.

Felder v. Casey, 487 U.S. 131, 140 (1988). *See also* J.S. ex rel. Duck v. Isle of Wight County School Bd., 402 F.3d 468, 476 (4th Cir. 2005) (noting that statutes of limitations are "such universally familiar procedural aspects of litigation, and because they are so generally understood as essential to a fair scheme of litigation, the judiciary is safe in assuming that Congress intended (or at least would have intended) to limit all congressionally created causes of action by statutes

of limitations") (quoting Brown v. United States, 742 F.2d 1498, 1506 (D.C. Cir. 1984) (*en banc*). It is therefore clear that Vandeusen's cause of action is subject to a statute of limitation, and that statutes of limitations are indeed favored.

Vandeusen argues that the defendant has been engaged in an ongoing or "continuing violation" of the ADA, and therefore that her statute of limitation should be tolled.[4] "Courts, however, seem to agree that the continuing violation doctrine exception to the statute of limitations should be narrowly applied." Moseke v. Miller and Smith, Inc., 202 F.Supp.2d 492, 504 (E.D. Va. 2002).

> "[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000); Spencer v. Sutton, 239 F.3d 626, 629 (4th Cir. 2001). The circumstances under which equitable tolling has been permitted are therefore quite narrow. . . . Equitable tolling is not appropriate . . . "where the claimant failed to exercise due diligence in preserving his legal rights." Irwin [v. Dept. of Veterans, 498 U.S. 89, 96 (1990).
> . . .
> "[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." Baldwin County Welcom Ctr. v. Brown, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984).

Chao v. Virginia Dept. of Transp., 291 F.3d 276, 283-84 (4th Cir., 2002).

The plaintiffs baldly allege that the "defendant's noncompliance with the ADA is an ongoing policy." [Pls' Brief at p. 8]. They do not; however, cite any evidence of a policy on behalf of the defendant that is in violation of the ADA. Their argument is that, despite the fact that the Shop Road facility was constructed in 1989 before the ADA went into effect, Vandeusen

---

[4]All of the South Carolina cases the plaintiffs cite for this proposition involve injury to land. There is no case that applies the continuing violations doctrine in any other context. Thus, the plaintiffs have not provided the Court with a state rule for tolling the statute of limitations that the federal court can borrow.

feels the ongoing effects of the construction, and therefore the existence of the facility is a "continuing violation" of the ADA. Vandeusen goes on to claim that she "sustains a new cause of action on each time she has the intent to return to the DMV center." This argument, along with being patently absurd, is essentially a "continuing effect" theory, rather than a "continuing violation." Vandeusen is arguing that, because she continues to feel the effects of the 1989 construction of the Shop Road facility, the 1989 construction of the facility is a continuing violation. This "continuing effect" theory has been repeatedly rejected by the courts whose decisions are binding on this Court. As the *Moseke* court noted:

> [T]he Supreme Court has consistently held that a continuing violation was not present where there was a subsequent effect resulting from the defendant's prior discriminatory act. '[T]he emphasis should not be placed on mere continuity; the critical question is whether any present violation exists.'" United Air Lines v. Evans, 431 U.S. 553, 557, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) (holding that the present discriminatory effect of a facially neutral seniority system resulting from a prior discriminatory termination was not a continuing violation); Lorance v. AT&T Techs., Inc., 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989) (rejecting the theoretical statutory construct that "to regard the employer as having been guilty of a continuing violation which 'occurred,' ... not only when the contractual right was eliminated but also when each of the concrete effects of that elimination was felt").
>
> . . . The proper emphasis here must remain on Defendants' acts (*i.e.*, the design and construction of non-compliant buildings), rather than the continuing effects (*i.e.*, the continuing inaccessible features) that those acts caused.
>
> Similarly, the Fourth Circuit has rejected the continuing violation doctrine where an effect is continuing, but the defendant's act is not. *See, e.g.*, National Advertising Co. v. City of Raleigh, 947 F.2d 1158 (4th Cir. 1991); Jersey Heights Neighborhood Assoc. v. Glendening, 174 F.3d 180 (4th Cir. 1999). . . .
>
> Based on this precedent, it is clear that the continuing effects of a previous discriminatory act do not constitute a continuing violation. . . .

Moseke, 202 F.Supp.2d at 506-07.

The Shop Road facility was constructed in 1989. [Pls' Brief at p. 7]. There is no

evidence of an act after the construction of the facility that Vandeusen alleges was in violation of the ADA. The only basis for her allegation that an act that occurred sixteen to eighteen years ago is still "continuing" is that she continues to feel the effect of that act. [Pls' Brief at p. 11: "Obviously, Plaintiff could have filed suit in 1992 but each time and each day the Defendant is not accessible to the Plaintiff and the disabled, an accumulative harm is inflicted on Plaintiff and, therefore, she can sue for each violation of her civil rights."]. However, the authority cited here clearly shows that a continuing effect does not constitute a "continuing violation." Accordingly, there is no support for the plaintiffs' argument that the statute of limitations should be tolled.[5]

> b.     **The doctrine of laches also bars the plaintiffs' claims.**

Plaintiffs' claim for injunctive relief would also be time-barred under the equitable doctrine of laches. Laches bars a plaintiff's claim when a defendant can show "lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." White v. Daniel, 909 F.2d 99 (4th Cir. 1990) (quoting Costello v. United States, 365 U.S. 265, 282 (1961)). In White v. Daniel, the Fourth Circuit held the district court abused its discretion in failing to dismiss a case, on grounds of laches, that sought equitable relief based on an alleged violation of law that occurred seventeen years earlier. On the element of "lack of diligence by the party against whom the defense is asserted," the Fourth Circuit noted:

> The defendant may show lack of diligence either by proof that the action was not commenced within the period provided by the applicable statute of limitations or by facts otherwise indicating a lack of vigilance.

---

[5] Moreover, as "the ADA Coordinator for the University of South Carolina" [Pls' Brief at p. 5], Vandeusen would necessarily be keenly familiar with the requirements of the ADA and especially likely to recognize discriminatory conditions of facilities. Therefore, she was never unaware of the allegedly discriminatory nature of the facility and thus not the sort of plaintiff the continuing violation doctrine might be designed to protect.

6

White, 909 F.2d at 102 (citing Giddens v. Isbrandtsen Co., 355 F.2d 125, 128 (4th Cir. 1966).

In this case, the plaintiffs did not file this action within the statutory limitations period and it is undisputed that Vandeusen recognized she could have filed suit as early as 1992. [Pls' brief, p. 11: "Obviously, Plaintiff could have filed suit in 1992."]. Vandeusen has offered absolutely no justification for waiting fourteen years to file suit. In fact, she fairly brags that she could continue to hold off filing suit as long as she "felt" the effects of the 1989 construction. Thus, the Court must conclude that the plaintiffs "delayed inexcusably or unreasonably in filing suit." White v. Daniel, 909 F.2d at 102 (quoting National Wildlife Federation v. Burford, 835 F.2d 305, 318 (D.C. Cir. 1987).

As to the second prong of the defense, there is obvious prejudice to the defendant in the plaintiffs' having failed to take action earlier. The Shop Road facility was constructed in the 1989-1991 time frame, and Vandeusen alleges that the initial construction violated applicable law. [Pls' Brief, p. 16 ("[w]hen constructing Defendant's parking the Defendant was obligated to provide no slope greater than 2%.")]. Had the plaintiffs taken action in 1992 when Vandeusen acknowledges she could have filed suit, the defendant would have been able to successfully bring a cause of action for negligence and breach of warranty against the builders of the facility for any violation of applicable law in the construction of the facility. Because the plaintiffs delayed fourteen years in bringing suit, the defendant is now barred by the statute of repose found at S.C. Code Ann. § 15-3-640 from bringing a cause of action against the builder of the Shop Road facility. Thus, because of Vandeusen's unreasonable delay in bringing the current cause of action, the defendant is left without a remedy against the builder responsible for the alleged violation of South Carolina law. This constitutes significant prejudice against the defendant. Accordingly, the Court should find the plaintiffs' claims are barred by laches. *See* White v.

7

Daniel, 909 F.2d 104-106 ("we hold that plaintiffs' claims are untimely under the doctrine of laches, and the district court abused its discretion in failing to dismiss the case"); Kloth v. Microsoft Corporation, 444 F.2d 312, 326 (4th Cir. 2006) ("In the circumstances of this case, we conclude that the district court did not abuse its discretion in applying the doctrine of laches to dismiss plaintiffs' equitable claims").

**2.     Vandeusen's perjurious interrogatory answers justify summary judgment.**[6]

The plaintiffs have failed to explain Vandeusen's three contradictory and conflicting sets of answers to interrogatories. In response to specific inquiries about the occasions and purposes of her visits to the Shop Road facility [Def's Second Interrogatories], Vandeusen initially responded that she visits the facility every November to renew her tags and in September to renew her driver's license. [*See* Vandeusen's answers, filed with Def's Second Motion to Compel]. With its Second Motion to Compel, the defendant presented evidence that directly contradicts Vandeusen's answers and shows she has not renewed her tags or license at the Shop Road facility for at least six years. In response to that motion to compel, Vandeusen presented an entirely new set of answers that contradicted her previous answers and in which she claimed to have visited the Shop Road facility on various other occasions and for various other purposes in 2004, 2005, and 2006. When the defendant pointed out that the new information Vandeusen provided was also contradicted by the defendant's records, Vandeusen presented *yet another* contradictory and conflicting "Amended Answer to Question 2," in which she states that she has been "unable" to renew her "license, car tags, placards, etc." at the Shop Road facility "because

---

[6] These matters are addressed in more detail in documents associated with the Defendant's Second Motion to Compel and the plaintiffs' related March 13, 2007 motion.

of its lack of accessibility" and that she has merely driven by the facility.[7] Vandeusen has therefore provided three different and conflicting answers to the defendant's interrogatory 2. One way or another, Vandeusen has committed perjury, and her counsel has drafted the documents for her to do it. Because of their misrepresentations and attempted fraud on the Court, the Court should refuse to entertain the plaintiffs' claim for injunctive relief.

The Fourth Circuit recognizes that a party that commits "fraud upon the court" can be precluded from an equitable remedy:

> Although most cases in which the clean hands doctrine has been applied are cases in which the cause of action itself has arisen out of or been the fruit of unconscionable conduct, we do not understand that it is a prerequisite to the application of the doctrine that the cause of action shall have so arisen. It is sufficient to bar relief that plaintiff has been guilty of unconscionable conduct directly related to the cause of action, such as the fabrication of testimony, the subornation of perjury or other like attempt to perpetrate a fraud upon the court or take an unconscionable advantage of his adversary. It is said that to have relief from a court of equity plaintiff must not only come into court with clean hands, but must keep his hands clean.

Mas v. Coca-Cola Co., 163 F.2d 505, 508 (4th Cir. 1947). The Court in Smith v. Cessna Aircraft Co., 124 F.R.D. 103, 106 (D. Md. 1989) agreed that a party whose actions before the court caused him to have unclean hands would be unable to recover in equity: "Moreover, although most cases applying the doctrine involve situations in which the plaintiff's hands were unclean at the time suit was filed, courts have also applied the maxim when, as here, the plaintiff's hands became soiled during the course of litigation."

Actions such as those these plaintiffs have engaged in have been held by courts to cause

---

[7]The plaintiffs did not provide this third contradictory answer until March 23, 2007, the *day after* the defendant filed its motion for summary judgment. Thus, any claim by the plaintiffs that they are somehow prejudiced by this reply argument is due to *their* belated attempt to correct yet again another fabricated set of interrogatory answers *after* the motions deadline.

the party committing them to be held to have "unclean hands." In the Mas case, the Court found that where the plaintiff had "to admit at the opening of his case that by perjury and forgery he had attempted to perpetrate a fraud on the Patent Office" the situation "call[ed] for nothing less than a complete denial of relief." Mas, 163 F.2d at 508-509. In Religious Technology Center v. Lerma, 908 F.Supp. 1353, 1361 (E.D. Va. 1995), the plaintiff's actions were found not to have risen to the level of "fraud on the Court," but the Court nevertheless concluded that the plaintiff had "misled the court," and thus denied the plaintiff equitable relief because of unclean hands. In the example most similar to the one at hand, Smith v. Cessna Aircraft Co., 124 F.R.D. 103 (D.Md. 1989), the plaintiff was found to have "committed fraud by submitting false tax returns in response to [a] request for production of documents" and "admitted lying under oath both in his answers to interrogatories and at his deposition." Id. at 105. In that case, the court dismissed plaintiff's claim, finding that "his previous deception during discovery constituted a fraud on this Court." Id. at 107.

      Vandeusen's contradictory interrogatory answers demonstrate a fundamental disrespect for the rule of law and the Court's authority. As the Supreme Court has noted, "tampering with the administration of justice . . . is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society." Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944). "He who comes into equity must come with clean hands" is "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however, improper may have been the behavior of the defendant." Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814-15 (1945). Id. at 105. The plaintiffs, because of their failure to give honest answers to

10

interrogatories, do not have clean hands, and the Court should thus deny their request for equitable relief.

**3.    The plaintiffs have not and cannot otherwise establish a claim for injunctive relief.**

As noted by the Honorable Alexander Harvey, II, United States District Judge for the District of Maryland:

> The ADA and the Rehabilitation Act are generally construed to impose the same requirements due to the similarity of the language of the two acts. *Rogers v. Dept. of Health, Envtl. Control*, 174 F.3d 431, 433-34 (4th Cir.1999). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[8] . . .
>
> Regulations implementing Title II explain the responsibilities of public entities in greater detail:
>
>> A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. *See* 28 C.F.R. § 35.150(a).
>
> The regulations make clear that § 35.150(a) does not "[n]ecessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a)(1). Rather, the issue is whether the service, program, or activity operated or owned by the public entity, "when viewed in its entirety," is readily accessible. *Pascuiti v. New York Yankees, et al.,* 87 F.Supp.2d 221, 223 (S.D.N.Y.1999).
>
> In order to establish disability discrimination under Title II of the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability. *Doe v. University of Maryland Med. Sys. Corp.,* 50 F.3d 1261, 1265 (4th Cir.1995).
>
> Article III of the United States Constitution limits the judicial power of the federal courts to resolving actual cases and controversies. *Finlator v. Powers,* 902

---

[8]Footnote by Court: "The language of § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) is very similar."

> F.2d 1158, 1160 (4th Cir.1990). A case or controversy is justiciable if it involves "issues that are precisely framed by their connection to specific litigants in a concrete context." *Gilles v. Torgersen,* 71 F.3d 497, 500 (4th Cir.1995). In the context of an ADA action, liability may not be found in a vacuum. *Long v. Coast Resorts, Inc.,* 32 F.Supp.2d 1203, 1210 (D.Nev.1998). The mere violation of the ADA does not alone establish injury. *Id.* A plaintiff is obligated to show, by competent evidence, that a defendant's violation of the ADA caused him actual injury before such plaintiff can recover. *Id.*
>
> To establish standing for injunctive relief, a plaintiff must first demonstrate that "he will suffer an injury in fact which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Proctor v. Prince George's Hosp. Ctr.,* 32 F.Supp.2d 830, 832 (D.Md.1998). To establish standing, a plaintiff must demonstrate that the conduct complained of will cause the injury alleged and that it is likely, not speculative, and that the injury will be prevented by a favorable decision. *Id.* at 832, n. 2. In ADA cases, courts have held that a plaintiff does not have standing to obtain injunctive relief if he cannot demonstrate a likelihood that he will suffer future discrimination at the hands of the defendant. *Id.* at 832.
>
> An injunction is an equitable remedy. *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 311, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). The decision to grant or deny an injunction lies within the sound discretion of the district judge, whose judgment will not be disturbed absent an abuse of that discretion. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1055 (4th Cir.1985). Where a plaintiff and a defendant present competing claims of injury, the traditional function of equity has been to arrive at a "nice adjustment and reconciliation" between the competing claims. *Weinberger,* 456 U.S. at 312, 102 S.Ct. 1798. In such cases, the court "balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction." *Id.*
>
> Under appropriate circumstances, a court may justifiably withhold injunctive relief altogether even though the law has been violated by the party sought to be enjoined. *Weinberger,* 456 U.S. at 313, 320, 102 S.Ct. 1798; *Prows v. Fed. Bureau of Prisons,* 981 F.2d 466, 468 (10th Cir.1992); *Woerner v. United States Small Bus. Admin.,* 934 F.2d 1277, 1279-80 (D.C.Cir.1991). "[T]he award of an ... injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff." *Yakus v. United States,* 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

Levy v. Mote, 104 F.Supp.2d 538, 543-44 (D. Md. 2000). Applying these legal principles, the

plaintiffs in this case cannot establish standing, a *prima facie* case of discrimination, or

entitlement to relief from this Court.

The evidence shows that Vandeusen is able to renew her driver's license and vehicle tags without visiting the Shop Road facility. The DMV has numerous facilities throughout the state, and Vandeusen has successfully visited several of them, most recently when she renewed her driver's license at the DMV's Decker Boulevard facility located one mile from Vandeusen's home. [*See* Wearing Affidavit; Fouty Affidavit]. Vandeusen has also renewed her vehicle tags each year by mail. [*See* Fouty Affidavit]. The plaintiffs have failed to contradict this testimony and failed to establish that Vandeusen has been "excluded from participation in or be denied the benefits of services, programs or activities of a public entity," as required to maintain a Title II claim. The plaintiffs have also failed to establish that Vanduesen "will suffer an injury in fact which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," as required to support the injunctive relief the plaintiffs seek. <u>Proctor v. Prince George's Hosp. Ctr.</u>, 32 F.Supp.2d 830, 832 (D.Md.1998). Accordingly, the plaintiffs' claim fails.

**4.     The defendant is otherwise entitled to summary judgment on AFDA's claim.**

AFDA has presented no justification for its failure to attend court-ordered mediation. While plaintiffs' counsel suggests in his brief that Vandeusen is a "secretary" for AFDA, there is no factual support for that statement. Early in discovery, the defendant asked the plaintiffs to produce "All documents evidencing the creation, existence, composition, management, membership, and all activities of Plaintiff AFDA." [See Defendant's First Request for Production, filed with Defendant's First Motion to Compel]. The plaintiffs never produced such documentation, and certainly in no manner ever identified Vandeusen as "an officer, director, or employee" of AFDA. There is absolutely no evidence that Vandeusen served in a role that would

qualify her to attend mediation on AFDA's behalf. The Court should not sanction subversion of mediation rules, particularly with such manipulations.

In response to the argument that AFDA lacks standing, the plaintiffs have not presented any *evidence* which supports *as a factual matter* their argument that AFDA has standing *in this case*. Only as a theoretical matter might AFDA have standing to sue, and the plaintiffs cannot at this junction merely rely on their pleadings. This matter is now before the Court on a motion for summary judgment in which the defendant has challenged the plaintiffs to present specific factual support for their claims. The plaintiffs have failed to present such factual support, and have thus failed to meet their summary judgment burden.

As quoted in Plaintiffs' Brief in Response to Defendant's Motion for Summary Judgment, standing on the part of an organization to file suit under the ADA requires "(1) its members . . . have standing to sue in their individual capacities; (2) the interests at stake are germane to the group's purpose of securing equal opportunity for persons with disabilities to participate in all areas of public life . . . and (3) neither the claims made nor the relief requested requires the participation of individual members in the suit. Bacon v. City of Richmond, 386 F.Supp.2d 700 (E.D. Va. 2005); *see also* Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343 (1977). It appears undisputed that AFDA has not satisfied at least the third prong of this test. In response to the defendant's previous contention that without Vandeusen, AFDA would not have any grounds to allege a reasonable likelihood of continuing or future harm to its members, the plaintiffs responded "neither the claims made nor the relief requested requires the participation of individual members in the suit." [Pls' Brief at p. 14]. This is nothing more than a conclusory statement of counsel with no factual support. To the contrary, Vandeusen is the only alleged member of AFDA that the plaintiffs have identified as

possibly intending to visit the Shop Road facility for a legitimate purpose in the future, and AFDA relies entirely on Vandeusen's participation in this lawsuit to establish its claim.

AFDA's failure to provide any *evidence* of its basis for standing is fatal to its claim because "the elements of standing are not mere pleading requirements, but rather must be supported by sufficient evidence." Piney Run Preservation Ass'n v. County Com'rs of Carroll County, MD, 268 F.3d 255 (4th Cir. 2001) (quotations and citations omitted). Based on the information provided by the plaintiffs, without Vandeusen's participation in this suit, AFDA would have no testimony to present, and no interest at stake in the condition of the Shop Road facility. Because "the relief requested requires the participation of individual members in the suit," AFDA clearly fails to satisfy the third prong of the test for associational standing. Bacon, 386 F. Supp. 2d 700. "When an association suing on behalf of its members cannot satisfy these requirements, it lacks standing and the federal courts have no subject matter jurisdiction over its claim." Davis Vision, Inc. v. Maryland Optometric Ass'n, 187 Fed.Appx. 299 (4th Cir. 2006).

## CONCLUSION

For all the reasons set forth in these filings, the defendant respectfully requests that the Court grant summary judgment in its favor.

s/Kathryn Thomas
Kathryn Thomas (DCID #5134)
GIGNILLIAT, SAVITZ & BETTIS, L.L.P.
900 Elmwood Avenue, Suite 100
Columbia, South Carolina 29201
Phone: (803) 799-9311 / Fax: (803) 254-6951

May 17, 2007
ReplyMotionSJ.1596.C.wpd

ATTORNEYS FOR DEFENDANT