IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Linda Vandeusen; Advocates for Disabled Americans (AFDA), | ) )  Civil Action No. 3:06-1092-MBS-JRM |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| Marcia Adams, in her Official Capacity as Acting Director of the South Carolina Department of Motor Vehicles, | ) ) )  REPORT AND RECOMMENDATION ) ) |
| Defendant. | ) ) ) |

Plaintiffs, Linda Vandeusen ("Vandeusen") and Advocates for Disabled Americans ("AFDA"), filed this case on April 7, 2006. Vandeusen alleges that she is a disabled wheelchair user. AFDA alleges that it "is a non-profit organization that conducts business in South Carolina whose goal in part is to enforce civil rights of this disabled community." (Complaint, ¶ 2). The defendant, Marcia Adams, is alleged to be the Acting Director of the South Carolina Department of Motor Vehicles ("DMV"). Plaintiffs' allegations concern the DMV office located on Shop Road in Columbia, South Carolina. Vandeusen alleges that the Shop Road office lacks "proper parking spaces, access aisles, curb ramps, and accessible routes" (Complaint, ¶ 7) in violation of the "alteration requirements of the Americans With Disabilities Act and Rehabilitation Act of 1973"(Complaint, ¶ 9). (First Count). Vandeusen seeks an order requiring defendants "to make said facility accessible to the disabled." (Complaint, ¶ 16) (Second Count). Last, Vandeusen alleges that defendant "at other sites, is a habitual offender of access laws allowing the Plaintiff to seek damages." (Complaint, ¶ 18). (Third Count). AFDA asserts that it "and its members in their own

right would have standing to bring this action" (Complaint, ¶ 20) entitling AFDA to maintain this action on its own behalf and on behalf of its members." (Complaint, ¶ 21) (Fourth Count). Pretrial matters in this case were automatically referred to the undersigned pursuant to Local Rule 73.02(B)(2)(g).[1]

Defendant filed a motion for summary judgment on March 22, 2007. Plaintiffs filed an opposition memorandum on April 30, 2007. Defendant filed a reply on May 17, 2007. Plaintiffs filed a sur reply on May 24, 2007.[2]

## **Standard for Summary Judgment**

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. "'(T)he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing

---

[1] Plaintiffs have abandoned their claims for damages and violations of state law. At this time, they seek only injunctive relief, attorneys' fees and costs.

[2] Defendant also filed a motion to dismiss AFDA on February 23, 2007. The arguments put forth in that motion are repeated in the motion for summary judgment. Therefore, the motion to dismiss will not be separately addressed.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995).  Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [see Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial.  Baber, citing Celotex Corp., supra.  Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corporation, 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7.  Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Services Co., 875 F. Supp. 1115 (D.Md. 1995).

The parties have presented their own versions of facts material to this case. (See Def. Mem., 2-4 and Pl. Mem., 5-7).  However, there is little evidence in the record to support these facts.  Defendant concentrates on inconsistencies in Vandeusen's unverified interrogatory answers.[3]

---

[3]On February 12, 2007, defendant filed a motion to compel Vandeusen to verify her answers to interrogatories.

Plaintiffs' facts contain legal arguments and conclusions. Few cites to the record are included. Apparently, no depositions were taken during discovery.

**Facts**

The facts, either undisputed, or according to the plaintiff as the non-moving party, with all reasonable inferences therefrom, to the extent supported by the record, are as follows:

1. Vandeusen has "dystonia musculorum deformans, a rare neuromuscular disease" which requires her to use a wheelchair for mobility. (Pl. Interrogatory Answer).

2. The DMV facility on Shop Road was designed in 1989 and opened for business in approximately 1991. (Blume Aff.).

3. "(T)here have been no alterations to the Shop Road facility since the facilities original construction." (Id.).

4. Vandeusen has "gone to Defendant's facility at Shop Road on many occasions." (Vandeusen Certification attached to Sur Reply Brief; Pl. Interrogatory Answer).[4]

---

[4] The timing and purpose of Vandeusen's visits to the Shop Road facility are in dispute. In answering defendant's first set of interrogatories, Vandeusen stated, "I have visited defendant's motor vehicle agency for the last twenty years. My last visit was November 16, 2005 at approximately 11:00 A.M." Defendant's second set of interrogatories specifically asked information relating to visits to the Shop Road facility. In response to the interrogatory asking the first time she visited that facility, Vandeusen responded "(a)pproximately for ten years." In responding to the interrogatory about the frequency of her visits to the Shop road facility, Vandeusen responded, "I usually go to DMV once a year. To renew my car tags I visit each November. I have visited for at least the last three years. I have also in the past gone in September for my license renewal." The answers to interrogatories remain unverified. Defendant has produced evidence that Vandeusen has "not renewed a vehicle registration in person at the Department's Shop road facility within the last six years." (Fouty Supplemental Aff.), and she "has not obtained or renewed her driver's license at the Department's Shop Road facility within at least the last ten years." (Wearing Aff.). Last, Vandeusen states, "(i)f I have been unclear in answers to interrogatories I apologize but I have used the facility including with Mr. Pavlak and Ms. Stutenko." (Vandeusen Certification).

4

5.Vandeusen visited the Shop Road facility with Albena Shutenko in December of 2005, but the purpose of the visit is unexplained. (Shutenko Aff.).

6.Vandeusen visited the Shop Road facility with Nicholas Pavlak on August 30, 2005, but the purpose of the visit is unexplained. (Pavlak Aff.).

## **Discussion**

1.Injunctive Relief

Plaintiffs sue the Acting Director of DMV in her official capacity seeking injunctive relief and alleging that the DMV is in violation of Title II of the ADA, 42 U.S.C. § 12101 et seq. and the Rehabilitation Act, 29 U.S.C. § 791 et seq. They allege that the DMV's Shop Road facility is inaccessible and unusable by individuals with disabilities in violation "of the alteration requirements of the Americans With Disabilities Act and the Rehabilitation Act of 1973." (Complaint, ¶ 9). Plaintiffs seek an Order requiring DMV to modify the DMV Shop Road facility in certain respects[5] to make it accessible to disabled individuals.

Congress passed the ADA in an effort to prohibit discrimination against the disabled. The effective date of the ADA was January 26, 1992. Title II of the ADA, which is the basis of this action, forbids discrimination in public services and transportation. It provides:

> (N)o qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of services,

---

[5] Plaintiffs complain that the facility's parking spaces, access aisles, curb ramps and accessible route are not in compliance with ADA regulations (Complaint, ¶ 7). Plaintiffs also argue that certain doors are difficult to open and that a toilet paper dispenser is positioned in violation of the regulations.

5

> programs, or activities of a public entity, or be subjected to discrimination by any public entity.[6]

42 U.S.C. § 12132.

The Attorney General of the United States is given the authority to promulgate regulations implementing Title II. See 42 U.S.C. § 12134(a). The regulations include detailed accessibility guidelines that provide minimum technical requirements for new construction and alterations to existing facilities. See 28 C.F.R. Ch. 1, Pt. 36. Review of these regulations shows that "(t)he overall policy of the ADA is to require relatively few changes to existing buildings, but to impose extensive design requirements when buildings are modified or replaced." Coalition of Montanans Concerned With Disabilities v. Gallatin Airport Auth., 957 F. Supp. 1166, 1168 (D.Mont. 1997).

> With respect to existing facilities, public entitles are not required to modify each facility to provide access by individuals with disabilities, but must operate all programs, services and activities in a manner such that, when viewed in its entirety, each service or program is "readily accessible to and usable by individuals with disabilities..." 28 C.F.R. § 35.150(a). Furthermore, this section provides an undue burden defense, stating that a public entity is not required "to take any action that it can demonstrate would result in a fundamental alteration in the nature, service, program, or activity or in undue financial and administrative burdens." 28 C.F.R. § 35.150(a)(3).

Kinney v. Yerusalim, 812 F.Supp. 547, 548 (E.D.Pa. 1993).

The regulations provide a variety of methods a public entity may use to provide each service, program, or activity into compliance with respect to existing facilities.

> A public entity may comply with the requirements of this section through such means as redesign of equipment, reassignment of services to accessible buildings, assignment of aides to beneficiaries, home visits, delivery of services at alternate accessible sites, alteration of existing facilities and construction of new facilities, use of accessible rolling stock or other

---

[6] It is undisputed that Vandeusen is a qualified person with a disability and that DMV is a public entity.

> conveyances, or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities. A public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section. A public entity, in making alterations to existing buildings, shall meet the accessibility requirements of § 35.151. In choosing among available methods for meeting the requirements of this section, a public entity shall give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities in the most integrated setting appropriate.

28 C.F.R. § 35.150(b)(1).

> A complaint must be filed not later than 180 days from the date of the alleged discrimination, unless the time for filing is extended by the designated agency for good cause shown. A complaint is deemed to be filed under this section on the date it is first filed with any Federal agency.

28 C.F.R. § 35.170(b).

The undisputed evidence of record in this case is that the only DMV facility about which plaintiff specifically complains is an "existing facility" as defined by the regulations and that it has not been altered since the effective date of the ADA. Therefore, defendants are entitled to summary judgment insofar as plaintiffs allege a violation of the "alteration requirements" (Complaint, ¶ 9) of the ADA and/or Rehabilitation Act. Further, plaintiffs have not alleged that Vandeusen, or any other disabled individual, has been "excluded from participation in, or ...denied the benefits or services, programs, or activities of" the DMV. (42 U.S.C. § 12132). The only allegation presented by the Complaint is that the Shop Road facility of DMV does not comply with the regulations of the ADA as those regulations apply to newly constructed facilities or to those which have been altered.

The only evidence that plaintiffs have submitted to the Court is: (1) an inspection report concerning the Shop road facility prepared by William Cody Associates, Inc.; (2) an affidavit of William B. Cody; (3) and Certifications of Vandeusen, Nicholas Pavlak, and Albene Shutenko. The

7

submissions from Cody and Pavlak appear to be purported expert opinion testimony. Defendant has submitted an affidavit of Stewart Blume concerning ADA compliance at the Shop Road office. It appears that the parties have identified no experts in this case. However, the undersigned assumes for the purpose of this Report and Recommendation that the Shop Road office does not comply with ADA standards for new construction or altered facilities.

Even if the complaint were construed to read that Vandeusen had been "excluded from participation in, or...denied the benefits or services, programs, or activities" of the DMV, plaintiffs have presented no admissible evidence on the issue. Vandeusen is a resident of Richland County (Pl. Ans. to Interrogatories). The DMV services which she uses are renewal of driver's license and vehicle registration. DMV maintains multiple facilities at which Vandeusen may access these services, as well as by mail and computer. To be successful under this theory, plaintiffs would have to show that these services were not "readily accessible to and usable by, individuals with disabilities" (28 C.F.R. § 35.150(a)) at least on a county wide basis. The only evidence plaintiffs have offered about any other DMV facility in Richland County is a cryptic, conclusory "certification" of Nicholas Pavlak that the Decker Boulevard facility of DMV does not meet ADA standards. This certification is attached to plaintiffs' Sur Reply Brief which was filed only after defendant had presented evidence that Vandeusen had not visited the Shop Road facility for several years, but had received services at the Decker Boulevard facility and by mail. (Supp. Aff. of Fouty and Aff. of Wearing). Pavlak has never been properly identified as an expert witness, there is nothing in the record to support his qualifications, and he has presented no data to support his conclusions. The undersigned, therefore, concludes that his certification is inadmissible. Even if this evidence were admissible, plaintiffs have presented no evidence concerning lack of access to

DMV services on a county wide basis. Plaintiffs have not shown they are entitled to injunctive relief.

    2.    Statute of Limitations

Defendant asserts that plaintiffs' claims are untimely and barred by a statute of limitations. Plaintiffs make several arguments to the contrary, all without merit. Plaintiffs' claims are brought under the ADA and the Rehabilitation Act. "Under ADA, a claim against a public entity based on alleged disability discrimination must be filed within 180 days of the alleged discrimination." White v. University of South Carolina - Columbia, 1996 WL 276540, *2 (D.S.C. 1996). In White, Judge Duffy applied the 180 day limitation period contained in 28 C.F.R. § 35.170(b) to the filing of the complaint in the United States District Court. The undersigned concludes that the 180 day limitation period applies to plaintiffs' claims under the ADA.

The Rehabilitation Act does not contain a specific limitations period. In such situation, Congress has directed courts to borrow the most appropriate state statute of limitations to apply to federal claims. 42 U.S.C. § 1988. See also, McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 129 (4th Cir. 1994) (citing Wilson v. Garcia, 471 U.S. 261, 266-67 (1986)). In McCullough, the Fourth Circuit held that the selection of an appropriate state statute involves a two step analysis: "The court should first select the state statute 'most analogous' to the federal claim...then consider whether application of that limitations period is consistent with the federal statute and its underlying policies." Id. See also, Wolsky v. Medical College of Hampton Roads, 1 F.3d 222 (4th Cir. 1993) (applying one year statute of limitations in Virginia Rights of Persons With Disabilities Act to Rehabilitation Act claim).

Defendant argues that the one year statute of limitations contained in the South Carolina Human Affairs Law, S.C. Code Ann. § 1-13-90, should apply to plaintiffs' Rehabilitation Act claim. (Def. Mem., 5). Plaintiffs contend, *inter alia*, that the general statute of limitations of S.C. Code Ann. § 15-3-530 should apply. The undersigned agrees with defendant. In Moore v. Greenwood School Dist. No. 52, 195 Fed. Appx. 140, 143, 2006 WL 2385268 (4th Cir. 2006), a Title IX case, the Fourth Circuit applied the South Carolina Human Affairs Law stating, "the same standard for evaluating claims under the State Human Affairs Law is used for evaluating claims under federal discrimination laws." The South Carolina Human Affairs Law specifically prohibits discrimination based on disability. S.C. Code Ann. § 1-13-10, et seq. The undersigned concludes that the South Carolina Human Affairs Law is most analogous to plaintiffs' Rehabilitation Act claim and that the one year statute of limitations is consistent with the Rehabilitation Act and its underlying policies.

Plaintiffs have presented no evidence that Vandeusen, or any member of AFDA, has visited DMV's Shop Road facility for the purpose of receiving "benefits or services, programs, or activities" of the DMV within the limitations periods. The present case was filed April 26, 2006. DMV records show that Vandeusen has not conducted any business at the Shop Road facility since 2001. (See Fouty Supplemental Aff. and Wearing Aff.). Nothing offered by plaintiffs contradicts this evidence.

Faced with the DMV records showing Vandeusen's failure to conduct any business within the limitations periods, plaintiffs argue that "each time she utilizes or intends to utilize the ADA non-compliant DMV [Shop road] facility states a new cause of action for ADA purposes." (Pl. Opp. Mem., 10). The undersigned concludes that plaintiffs are half right. The case quoted by plaintiffs, Pickern v. Best Western Timber Lodge Marina Resort, 2002 WL 202442 (E.D. Cal. 2002), rejected

10

defendants' argument that a "discovery rule" should apply to begin the running of the statute of limitations. In Pickern, plaintiff stayed in a motel in 1997 and 1999. The Court held that each time the plaintiff stayed in the motel and encountered non-compliant ADA barriers, the statute of limitations began again. Thus, plaintiffs' case was timely based on the 1999 visit. The undersigned agrees with this holding. The Pickern court did not hold that each time plaintiff "intended" to check into the motel that the statute of limitations was renewed. Plaintiffs' argument, if accepted, would render statutes of limitations meaningless. The undersigned concludes that neither Vandeusen's intent to visit the Shop Road facility nor her accompanying Pavlak and Shutenko for their inspections begins a new limitation period. There is no evidence in the record that Vandeusen returned to the Shop Road facility to participate in, or gain the benefits of services, programs, or activities of the DMV on these occasions. Vandeusen has not alleged or shown that she intends to return to the Shop Road office to conduct business in the future.

    3.    Laches

Defendant also asserts in her Reply brief that plaintiffs' claims are also barred under the equitable doctrine of laches. This defense was raised in defendant's answer. Laches may bar a plaintiff's claims when the defendant shows "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." White v. Daniel, 909 F.2d 99 (4th Cir. 1990) (quoting Costello v. United States, 365 U.S. 265, 282 (1961)).

Plaintiffs do not deny that Vandeusen was aware of the alleged ADA violations for a number of years. In her interrogatory answers she indicates that she first visited the Shop Road facility approximately ten years ago. Further, plaintiffs indicate that their case could have been filed as early as 1992. (Pl. Opp. Mem., 11). However, defendant has not shown prejudice with respect to

11

plaintiffs' ADA and Rehabilitation Act claims. Defendant's primary prejudice argument is that defendant cannot now, under state law, bring an action against the builder of the Shop Road facility for "alleged violations of South Carolina law." (Reply 7).

    4.       Standing

Defendant asserts that AFDA does not have standing to maintain this action. AFDA asserts that it has both "organizational standing" and "representational standing."

Federal jurisdiction is limited to actual cases and controversies. United States Constitution, Art. III, § 2. A plaintiff is required to prove standing. He may do so by showing that: (1) he suffered an injury in fact; (2) a causal connection between the action of the defendant and the injury; and (3) the injury would be redressed by a decision in his favor. Lujan v. Defenders of Wild Life, 504 U.S. 555, 560-61 (1992), and Friends of the Earth, Inc. v. Laidlaw Envtl. Services, 528 U.S. 167, 180-81 (2000). Since the ADA and Rehabilitation Act do not require that an action be brought only by a qualified person with a disability, an entity or organization may have associational standing to bring an action. Innovative Health Systems v. City of White Plains, 117 F.3d 37 (2d Cir. 1997). "An organization has standing to sue under the ADA if it meets Article III's standing requirements. An organization can establish standing to bring suit under two theories. The first is an organizational theory which enables an organization to bring suit on its own behalf. The second is a representational theory which allows an organization to sue on behalf of its members." Goldstein v. Costco Wholesale Corp., 278 F. Supp. 2d 766, 769 (E.D.Va. 2003) (internal quotation marks and citations omitted).

a.    Organizational Standing

To prove organizational standing, a plaintiff must show "such a personal stake in the outcome of the matter to warrant [its] invocation of federal court jurisdiction." Maryland Highways Contractors Ass'n., Inc. v. State of Maryland, 933 F.2d 1246, 1250 (4th Cir. 1991).  In Havens Realty Corp. v Coleman, 455 U.S. 363, 379 (1982), the Supreme Court held that an organization has standing to sue based on its own right if the organization has suffered a "concrete and demonstrable injury to the organizations activities."  An organization suffers a concrete and demonstrable injury if it diverts its resources, time and money from its primary activities to legal efforts to fight discrimination by the defendant. Id.  "When an organization's primary source of revenue is litigation directed against alleged discrimination, it cannot be said that the organization's participation in such litigation impairs its ability to do its work." Goldstein, 278 F. Supp. 2d at 771.

AFDA has not alleged or shown that it has suffered a "concrete or demonstrable injury" under these principles.  The record is bare as to exactly what its activities are other than engaging in litigation.  Thus, AFDA has not shown that it has organizational standing.

b.    Representational Standing

"An organization has representational standing when: (1) at least one of its members has standing to sue in his own right; (2) the organization seeks to protect interests germane to the organization's purpose; and (3) neither the claim asserted nor the relief sought requires participation of individual members." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 155 (4th Cir. 2000).  Defendant appears to concede that Vandeusen is a member of AFDA and that she has standing to sue in her own right.  Defendant also appears to concede that the present litigation relates to AFDA's alleged organizational purpose "to enforce civil rights of the

disabled community" (Complaint, ¶ 2). However, the undersigned concludes that AFDA does not meet the third part of the test for representational standing. The individual plaintiff's participation in this case is required because Vandeusen must present evidence to establish her own standing. Molski v. Mandarin Touch Rest., 359 F. Supp. 2d 924, 935 (C.D.Cal. 2005).

Courts have also found absence of standing in similar cases based on prudential standing doctrines. Access 123, Inc. v. Markey's Lobster Pool, Inc., 2001 WL 920051 (D.N.H. 2001) is squarely on point. In that case, the advocacy organization (Access 123) and a lone co-plaintiff (Michael J. Muehe) sought injunctive relief to require a restaurant to alter its facilities to comply with ADA standards. Plaintiffs presented no evidence that any other Access 123 member had visited the restaurant or intended to do so if the alleged ADA violations were remedied. The Court found:

> (C)ourts consider prudential limitations on the exercise of jurisdiction, including the "general prohibition on a litigant's raising another person's legal rights." Allen v. Wright, 468 U.S. 737, 751 (1984). Courts also "limit access to the federal courts to those litigants best suited to assert a particular claim." Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979).
>
> In this case, Access 123 is merely repeating the claims brought by Muehe, himself. Muehe appears to be the better party to assert his own claims. Therefore, Access 123 lacks standing to assert claims on Muehe's behalf, and lacks standing to assert claims on behalf of its other members.

Access 123, Inc. at *4. Accord Molski v. Mandarin Touch Restaurant, 395 F. Supp. 2d at 935-36, and Molski v. Kahn Winery, 381 F. Supp. 2d 1209, 1210 (C.D.Cal. 2005).

In the present case, AFDA has not identified any of its members in South Carolina other than Vandeusen. AFDA seeks only the same relief as Vandeusen. The undersigned finds that Vandeusen is in the best position to assert her own claims, and that prudential concerns dictate that AFDA be dismissed for lack of standing.

4.  Mediation

A mediation conference was held in this case on February 1, 2007, pursuant to Local Rule 16.04 (D.S.C.). The rules require that a corporation be represented at mediation by "an officer, director, or employee having full authority to settle the claim for a corporate party." Local Rule 16.08(B)(2). Vandeusen and counsel appeared for the mediation conference. Defendant asserts that AFDA should be dismissed because no officer, director or employee of AFDA appeared. Plaintiffs assert that Vandeusen is the secretary of AFDA, (Pl. Opp. Mem., 5), however, there is no evidence in the record to support this contention. The undersigned finds that the burden is on the party seeking sanctions to show a violation. Defendant has not do so. AFDA should not be dismissed as a party on this basis.

## **Conclusion**

After reviewing the record, the undersigned recommends that:

1.  Defendant's motion for summary judgment be granted as set forth above;

2.  Defendant's motion to dismiss AFDA be granted; and

3.  Defendant's motion to compel verification by Vandeusen be denied as moot.

      Respectfully submitted,

      s/Joseph R. McCrorey
      United States Magistrate Judge

July 31, 2007
Columbia, South Carolina

15